(88 Hun, 328.)

## MEAGLEY v. HOYT.

(Supreme Court, General Term, Fourth Department. July 5, 1895.)

1. SALE—BREACH OF WARRANTY—ACCEPTANCE OF GOODS.
   A purchaser of goods under an executory contract of sale by sample, with warranty that the goods shall correspond with the sample, may recover for breach of the warranty, though he has accepted the goods after opportunity for inspection.

2. SAME—PROOF OF ADULTERATION.
   On an issue as to whether a quantity of tallow sold to plaintiff by defendant was adulterated, it appeared that two barrels, when melted, were found to contain 30 per cent. of marble dust. On this discovery the remaining 83 barrels were inspected, and, after taking a thin skimming off the top, each barrel was found to contain a gritty matter throughout. The 83 barrels were used in connection with other tallow, and the kettles in which they were melted contained a large quantity of a substance similar to that deposited on melting the first two barrels. It appeared that, at about the time of the sale, defendant had at its works a quantity of marble, and there was no evidence that defendant had any use for marble dust, unless for purposes of adulteration. *Held*, that the evidence was sufficient to enable the jury to find that the 83 barrels of tallow were adulterated, and to estimate the amount of adulteration in the entire quantity of tallow.

3. SAME—OFFER TO REPURCHASE.
   The right of a buyer to sue for breach of warranty is not lost by refusing the seller's offer to take the goods back at the price paid.

Appeal from circuit court, Broome county.

Action by Julia L. Meagley, as executrix of Rosell H. Meagley, deceased, against Joel S. Hoyt, as surviving partner of Joel S. Hoyt & Co. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on a case and exceptions, defendant appeals. Affirmed.

· The action was for a breach of warranty on the sale of a large quantity of tallow to the plaintiff's testator by the firm of Joel S. Hoyt & Co., of which the defendant is the survivor. The defendant's firm were manufacturers of tallow. The contract was made by correspondence between the parties. The questions whether there was an express warranty of the tallow sold, if so, whether there was a breach of such warranty, and the amount of damages sustained by the plaintiff, were submitted to the jury, which found for the plaintiff. The verdict was $172.21, after deducting the defendant's counterclaim of $404.18. Thus, the amount of damages awarded to the plaintiff was $576.39, including the interest upon the balance after deducting the amount due the defendant.

The opinion of Mr. Justice PARKER on denying the motion for a new trial is as follows:

The action is for a breach of warranty in the sale of a large quantity of tallow. The defendant earnestly contends that there was no warranty that survived the acceptance and use of the tallow by plaintiff, and urged a nonsuit upon that ground. The court denied the motion, and left that question to the jury. Exception was also taken to such ruling, on the ground that it was a question of law for the court. When this case was in the court of appeals (26 N. E. 719) no opinion was expressed upon this question. The only point decided there was that there was no evidence to show that any of the tallow was adulterated other than the 85 barrels on hand March 12th, and that it was error to include any of the other barrels in estimating plaintiff's loss. That decision was followed upon the last trial, and none but the 85 barrels

were considered. The existence of a warranty, and the plaintiff's right to recover for its breach without having offered to return the property, was recognized and sustained by the general term in 12 N. Y. St. Rep. 357. The decision upon that question has never been reversed, and is still controlling upon this case. Moreover, I am entirely satisfied that the contract between the parties was a sale of goods, with a warranty that they should correspond to a sample furnished. The first five barrels were sold as a "sample" of defendant's tallow, and it seems very plain to me that both parties understood that all tallow subsequently ordered and delivered should correspond to such sample. The letters and plaintiff's evidence clearly indicate that. In this view of the case, the refusal to nonsuit was no error; and, even if the question was one for the court alone, its submission to the jury was harmless. In Zabriskie v. Railroad Co., 131 N. Y. 72, 77, 29 N. E. 1006, it is said: "The principle is well settled that upon an executory sale of goods by sample, with warranty that the goods shall correspond with the sample, the vendee is not precluded from claiming and recovering damages for a breach of warranty, although he has accepted the goods after an opportunity for inspection." These considerations dispose of defendant's objections that no warranty survived plaintiff's acceptance of the tallow.

On the trial, plaintiff's right to recover was limited to the loss sustained by an adulteration of 85 barrels. But defendant claims that the evidence to show an adulteration of those barrels, and the extent of it, is too uncertain and speculative to sustain a recovery. It appeared that two barrels of this 85 were melted by themselves, and a deposit of marble dust or other extraneous matter was discovered in the bottom of the kettle. Out of 487 pounds melted, 132 pounds of this worthless substance was deposited. Nearly 30 per cent. of those two barrels proved to be an adulteration, and not tallow. Upon this discovery, the remaining 83 barrels were inspected, and, after taking a thin skimming off of the top, the rest of each barrel was found to exhibit a gritty feeling to the touch, and white flakes were visible throughout the whole. Upon being used in the soap kettles, with tallow from other sources, it was found that in a few weeks the steam coils in such kettles were so covered with a similar deposit that they would not heat the material. And, upon being cleaned out, many barrels of such deposit were found in them, each barrel weighing about 500 pounds. The average weight of the 83 barrels was 284 pounds each, and plaintiff testified that the two barrels, tested as above, were worth 30 per cent. less than if as warranted. It was also shown that at about this time defendant had in the works at Syracuse some barrels of marble dust, similar to that deposited. Here seems to be direct evidence of some injurious gritty substance in all of the barrels, and that in two of them, taken indiscriminately from the lot, such gritty substance equaled about 30 per cent. of the whole. Also the number of barrels and weight of a similar deposit found after using the 83 barrels in the soap kettles gave some indication of its proportion to the whole. It is not a forced presumption that the deposit in these kettles was the gritty substance perceived in the 83 barrels; and, while a jury may not have been able to reach with mathematical certainty the precise weight and extent of this adulteration, yet here was ample evidence from which they could estimate it. Here was actual adulteration in each barrel shown, and data from which the amount of the whole could be ascertained with reasonable certainty.

The defendant's claim that it did not appear that the tallow tested and that contained in the 83 barrels was tallow purchased from defendant is not sustained by the evidence. Although Hogan could not tell what particular shipment it was from, or even that any tallow at all came from Hoyt's, except from hearsay, yet he knew that the tallow came from the lot set apart as Hoyt's, and the plaintiff himself identified the lot as defendant's tallow.

After the action had been commenced, and before the 83 barrels had been used, defendant offered to take them back, and repay to the plaintiff the purchase price of the same. This offer the plaintiff rejected, and defendant now claims that for such reason he can recover only nominal damages. To sustain this proposition, defendant invokes the well-established rule that it is the duty of a person claiming for the breach of a contract to use such reasonable exertions as will render his injury or loss as small as possible. His argument is that had plaintiff accepted the offer he would have been fully compensated,

and that by rejecting it he has enhanced the damages, and that, therefore, he should not now recover any damages at all. Manifestly, that rule does not go to that extent nor apply to this case. Under the rule, it is only the enhanced damages which plaintiff has willfully created that he is prevented from recovering. Here defendant seeks to deprive plaintiff of all his damages. Moreover, by plaintiff's refusal, defendant is not now called upon to pay more than he then offered. He was to restore the purchase price, and himself take the adulterated tallow, which the evidence shows was worth 30 per cent. less than that price. In either way the 30 per cent. loss, and no more, is borne by the defendant. Nor was plaintiff's refusal to accept the offer unjust, for by doing it he would have received no compensation for his loss on the two barrels that had been melted, and he would have had to pay his own costs already incurred in this action. But this position of defendant is untenable for the reason that in no case can a defendant, after action brought, 'bar the same, or reduce the damages by a mere offer to restore property, or to pay as damages a specified sum. He may make a tender as provided by law, or an offer for judgment, as provided by the practice; but an offer of settlement in any other form neither abates the offer nor mitigates the damages.

It may be that the use of the tallow for the making of soap after the discovery of its adulteration was not warranted, and that plaintiff would not be entitled to recover any damages sustained solely because of such use. It may be that the depreciation of the 85 barrels as a marketable commodity were the only damages he was entitled to recover, and that so far as the charge presents to the jury any other rule of damages it was error. But no exception is taken to any instruction on that subject, save the refusal to charge that only nominal damages could be recovered. The attention of the court was not called to any expression that might bear an improper meaning in that respect, nor does defendant now suggest any, and hence a criticism of the charge on that subject is not properly before me. As to the admissions of the evidence of the plaintiff, who was deceased since the trial at which it was given, no objection was made except to that part referring to samples had upon the former trial, but lost, and hence not produced at this. The ground of the objection was "that a lost exhibit cannot be put in evidence." The exhibit was not put in evidence. The testimony of the witness was allowed to be read so that the evidence of the expert Griffis, who referred to samples that he had tested by numbers, would be intelligible. Clearly, no evidence was given under that ruling that has at all prejudiced the defendant; and I now understand that defendant's counsel makes no point about it.

I do not find any error in the record that requires a new trial, and the motion is therefore denied, with costs.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Homer Weston, for appellant.
Clark & Brown, for respondent.

MARTIN, J. A careful examination of the evidence in this case, and of the opinions by this court and the court of appeals upon a former appeal, renders it manifest, we think, that the judgment should be affirmed, unless there was a failure to prove a breach of the defendant's contract of warranty, or to establish damages to the amount recovered by the plaintiff. We are of the opinion that, as to the 85 barrels of tallow for which the plaintiff was permitted to recover damages, there was sufficient proof of a breach of the defendant's warranty and of the plaintiff's damages to uphold the judgment. Two barrels of this tallow were melted, and found to contain about 30 per cent. of marble dust. The plaintiff's evidence was to the effect that her testator had 83 barrels of this tallow on hand March 16, 1884; that every barrel of it that was used after that time was examined; and it was found that in all of them, after tak-

ing the skimmings off the top, which looked all right, and getting into the barrels, there was grit, and, after going into the barrels, white specks could be seen, and grit could be felt between the fingers. The evidence was also to the effect that, on the bottom of all the kettles in which this tallow was melted, there was a sediment similar to that found after melting the two barrels; that 16 or 18 barrels of this sediment, weighing about 500 pounds to the barrel, were taken out of two of the kettles; and that there was some in the tank below which opened into the drain. It was also proved that the defendant had marble dust, like that found in the tallow melted, in the factory where this tallow was manufactured, and no use for it was shown unless for adulteration.

On the former trial the court charged that the jury was authorized upon the evidence to find that all the tallow sold to the plaintiff's testator by the defendant except the first five barrels was adulterated, and to award damages therefor. This the court of appeals held was error (26 N. E. 719); and, in discussing that question, Ruger, C. J., said:

"So far as the 122 barrels which had been used before adulteration was discovered are concerned, there was no evidence whatever that they were adulterated; but, on the contrary, there was affirmative evidence that a large proportion thereof was free from the admixture of any foreign substance. With reference to the balance of the tallow, there was no positive evidence that any of it was adulterated, except about three barrels."

On the last trial the court held that as to the 122 barrels the plaintiff could not recover, but as to the 85 barrels the court submitted to the jury the question whether it was adulterated, the extent of such adulteration, and the amount of damages sustained by the plaintiff. If it were admitted that there was no direct and positive proof that all of these 85 barrels of tallow were adulterated, still, we think, the case was properly submitted to the jury, as there were circumstances shown which rendered it at least quite probable that they were adulterated, and that the plaintiff sustained damages thereby to the amount for which the jury rendered a verdict. This conclusion is not, we think, in conflict with the decision of the court of appeals. It was not held by that court that the evidence was insufficient as to this portion of the tallow, the only statement in regard to it being that there was no positive evidence that any of it was adulterated except about three barrels. It would seem that, if it was then contained in the appeal book, the learned judge who wrote the opinion must have overlooked the evidence of the plaintiff's witnesses to the effect that every barrel of this tallow used was examined, and this foreign substance found, which could be seen and felt after getting through the skimming upon the top. As the evidence now stands, we are of the opinion that it was sufficient to justify the submission to the jury of the questions submitted, and to uphold the verdict.

No further consideration of the questions in this case seems necessary, as they are fully discussed in the opinion of PARKER, J., delivered at special term, in which we concur.

Judgment and order affirmed, with costs. All concur.